Good morning. May it please the court, my name is Baldwin Lee. I represent the appellants. I'd like to reserve four minutes for rebuttal. Just watch the clock, counsel. Thank you. A per se individual bedroom's requirement contradicts Skidmore and the plain language of 29 CFR 785.23, both of which require consideration of all of the pertinent facts. Well, now, don't we have a jurisdictional threshold issue here in this case? The first issue, Your Honor, is that jurisdiction does exist here pursuant to the controlling precedent of SEIU. In this case, it fits squarely into the circumstances as this Court's case in SEIU. Specifically, there is an unsettled Fair Labor Standards Act issue of national significance. This legal issue does not depend on the particular facts of the case. The remaining issues in this case will not affect the issue that's been fully briefed before this Court. But this issue was raised before, was it not? Before our argument, not after. In other words, I guess I'm trying to understand. We have Gillespie here. We have Gillespie, and then we have this Court's specific precedent in SEIU v. County of San Diego, which had determined that applying the Gillespie factors in a case where there was an — in that case, it was an FLSA case regarding exemption under the FLSA. It was a case that was unsettled of national significance. Well, why should we follow Gillespie? Gillespie just seems like an aberration. Jurisdiction was brought up during oral argument before the Supreme Court. I don't know why it waited until then. So they said, well, we've got jurisdiction because we've read the briefs. I guess that's how it goes. And so they took it. But in Cooper's Librand, they've just rejected, it seems to me, that idea that it's very odd when they would ever take a case like this. Why would we feel we have jurisdiction after Cooper's Librand? Why would we even think about Gillespie? Okay. In — Gillespie talks about jurisdiction in limited circumstances. And this Court in the SEIU case specifically found that under those circumstances that there was practical finality. And so — But Cooper's Librand is the one that said Gillespie is — they practically rejected Gillespie in Cooper's Librand. Why wouldn't we follow that case? I believe that the controlling authority here, while Cooper's Librand may say that it is under narrow circumstances, that the exact circumstances in this case, in terms of a national issue that is unsettled, in terms of the case being practically final, in terms of the case now having been passed the motion stage being on the merits before this Court, is in all fours with that case. Remind me of something. At a lower level, it's partial summary judgment. You've got a determination on a legal issue, but no damages calculation yet. Right? It is correct. Just like — Right. Was there a 54B certification? There was not. There is not a 54B certification. Was there a 1292 certification? There was not, because this case fits squarely into SEIU. So you depend — you've got a partial summary judgment, no 54B, no 1292. You depend on Gillespie. Right. Specifically under the circumstances of that. And that's it. You stand and fall on Gillespie. Right. On Gillespie, SEIU, and then in this case, the district court has indeed stayed all proceedings to address this issue that's fundamental to this case. So — Now, there are four factors in SEIU that were, in effect, incorporated from Gillespie. But the fourth one is the finality issue was not presented to the appellate court until argument on the merits. Does that apply here? It does apply here, Your Honor. In this case, this case has now been fully briefed. There was a motion that was raised, but that was denied. And so now this case is on the merits. The case has been fully briefed and is before the court so that the same factor that this Court considered in SEIU, which was if we remand, we'll leave an unsettled issue of national significance, that same issue articulated by this Court when it fell in jurisdiction in SEIU, exists here. Well, help me with the facts on this. Did the DOL file a motion contesting jurisdiction immediately upon the filing of this appeal or not? It filed the motion after this appeal was filed. That's correct. All right. So you're out of Factor IV. But the motion was denied and such that now, in terms, I believe, the issue that they were going to raise. What difference does that make in terms of the four-factor test? I think the difference that it makes is the consideration was the same consideration that they're looking at in Gillespie, which is not only do we have an issue of national significance that's unsettled, but it's fully in front of us now. And it's fully in front of this panel now. You know what I don't get is generally we try to dodge decisions of national significance if there's some ground on which to avoid making them, because we can be wrong and it's just a matter of restraint. I believe that the law set forth in the precedent of this Court in SIU establishes that in this, in these particular limited circumstances where you have a Fair Labor Standards Act issue of an exemption, or in this case, of the regulation, it is unsettled. The remaining issues do not affect this fundamental issue on which it's been fully briefed and now before the Court. Under those limited circumstances, the Court finds this. I can see where as a practical matter it might not need to be decided. For example, suppose the appeal is dismissed, you go back and litigate damages and it turns out the damages are just nickels and dimes, and what happens is that it isn't worth it to anyone to fight about it. I don't think that's correct in this case for two reasons. One reason is that the complaint asks for declaratory relief here, which means that going forward. I mean, I'll get it. Well, the district court has already stated that on the issue on appeal, that an employer, any time two employees share a bedroom, they may not enter into a reasonable agreement regarding hours of work. In other words, what the Department of Labor has asked for is that the health care homes pay the employees for 24 hours a day, every day that they're there. And in that circumstance, in terms of the issue. Or give them some real time off in privacy. Well, they have to have a separate bedroom, no matter what the circumstances. So even if they're married, under the district court's rule, it says all employees must be separated from all other employees, regardless of whether they're married, domestic partners, sisters, other kinds of consenting adults. It abrogates or disregards the Supreme Court's instructions in Skidmore, the law. Is this an unsettled issue of national significance? It is. It is an issue of the law. Why is it unsettled? Hasn't this ruling been in since, what, 1988? It has not. The Department of Labor seeks to refer to a 1988 relief workers' bulletin. That bulletin, this is not a case of Chevron deference. That bulletin, which did not go through the rulemaking process, is one of the bulletins in a shifting set of statements of the Department of Labor of their opinion of the law. I wonder how much significance it has. I read the facts, and I thought, my gosh, even in jail you have more cross-sex privacy. They have a married couple with a third person in the same bedroom. They have two married couples in two double beds in the same bedroom. Is that common in the industry? Is there really any significance, or is it just this one company that has an unusual practice? I don't think it's the one company. And the rule, for one thing, the district court ruled without consideration of the facts. It applies to all employees of health care homes, the married employees, the brothers and sisters who work there. It applies to everyone unequivocally. And it says in the district, the Department of Labor said, you're not allowed to present any evidence at trial regarding whether there's a reasonable agreement. As this Court found in Brigham v. Eugene Water and Electrical Board, you need to apply skid more when you're looking at these agreements regarding employees. And you have to look to all the circumstances. You cannot elevate one factor to an all-or-nothing test. What has happened here is that one factor, who you live with, who is in your bedroom, has been elevated to that. And that creates what even the Department of Labor agrees is a nonsensical rule, because when we try to apply it, what about married couples? What about sisters? And that's the issue here, where the rule should be as this clear text of 785-23 states, which is that the only people who were sharing bedrooms were husband and wife. Well, husband and wife, but in terms of the whole of it. Nobody bothered them once they'd done their eight hours. In terms of the per se rule, the district court makes no exception and takes into account no circumstances, whether it's married couples or domestic partners or two sisters. It says that in no case may they share a bedroom. It takes – it removes the analysis of whether the – what you have to look at if they lived there, is whether it's an agreement and whether it's reasonable under all the circumstances. And that's what this Court in the Brigham v. Eugene Water and Electrical Board case said. This Court noted the crucial insight of 785-23 is that when employees live there, as opposed to living somewhere else, that it's hard to determine hours worked and thus, pursuant to Skidmore, will defer to the agreement if it's reasonable under the circumstances. And in this case, it, contrary to Skidmore and contrary to this Court's analysis of 785-23, bars a consideration of reasonable agreements simply because of who shares the bedroom. And that's also been criticized by other courts. Because what they've done is they've taken the word reside and added a non-temporal component to it. And we know that other courts rightfully have equally rejected that notion. For example, the sister circuit, this Court in Bouchard, said, wait a second. In this ADA bulletin, for the first time, you say that because we know that 785-23 talks about people who live there, who reside there permanently, then the Department of Labor wanted to extend that to people who are relief workers. They created this special rule and said, okay, if you're relief workers, we're going to add to that term reside that the employer pay them for eight hours a day. And as noted by the 8th Circuit in Bouchard, that's wrong. You've added a non-temporal component to reside. When you say reside, you need to look at what you're saying is that they live there. It's not if you pay them eight hours a day. And it said that is an erroneous overreaching from the Court and that that does not goes past and errs from what Skidmore told us in terms of the relationships varying and having to take account for varying relationships, that the law does not determine the arrangement of the parties. The law gives courts the task of determining what the arrangement is. Your opposition will say I'm sure that there's so many issues left the district court should get to them. That's why it's not practical finality. And they list the hours worked by Hall's employees, the adequacy of Hall's record keeping, Hall's FLSA violation, were they willful, et cetera. What's your response to that? It can't be practically final because there's so much left to be done. I believe that it is practically and marginally final consistent with this and are all fours with the ACIU case. And in the analysis there, the Court said if it's an FLSA issue of determining an exemption or in this case determining the applicability of Federal regulation, if the remaining damage issues do not affect the obviously critical issue in the case that is before the Court, before the appellate court on appeal, it is marginally final. That's the law of this circuit. That exact circumstance exists here because the obviously central issue is if you have more than one employee per bedroom, is there a per se rule that then you don't go look at the circumstances as to whether there's agreement regarding hours worked? The Department of Labor itself stated to the trial court there's nothing left but a molehill to address. And that I don't think is the critical part, but it does give flavor to the fact that the critical issue in the case is the one that's briefed, the one that does not depend upon the facts that's before this Court. Roberts, you're down to about two minutes. If you want to reserve, you may do so. I would. Thank you, Your Honor. We'll hear from the government. May it please the Court. My name is Rachel Goldberg, and I represent the Secretary of Labor. The Department still maintains that this Court does not have jurisdiction because the district court's decision was not a final order. And you made a motion to dismiss the appeal for lack of jurisdiction? Correct. Just after Jasmine Hall filed this appeal. So this is not like Gillespie where it just pops up at oral argument? Correct. We made this at the outset of the appeal. It was denied without prejudice and specifically stated in that brief denial that we should renew the arguments if we wish. And this is factor 4 in the SEIU case? Yes. And the fact that we brought it up at that point, yes, it is. And therefore, according to your argument, the SEIU does not apply? I do not believe it does. It's distinguishable from this case for several reasons. Significantly here, there are several issues remaining to be determined, as the Court has alluded to. What else is there besides damages? Well, there's liquidated damages and willfulness, and then there's the actual damages itself, the calculation of hours worked, the compensation that's owed. Those need to be determined still. So there are several issues and likely to be disputes regarding those issues. We're not sure. But so to allow interlocutory review of this order. But will those things bear on the decision that's already been made? They could bear on that in that we foresee that, assuming this Court determines it does not have jurisdiction and the district court proceeds, the issue will come up of whether 785.22 is applicable here. And whether it turns out to be applicable and how the damages are calculated, if it is applicable, would certainly affect how this Court might view the district court's ruling that 785.23 does not apply. We have 22 and 23. They're two separate regs. Correct. Yes. And to allow interlocutory review at this point could certainly lead to piecemeal litigation, because if this Court were to affirm on the merits and we have further disputes regarding damages, we'll be here all over again. It just doesn't make sense for a judicial economy to proceed with this interlocutory appeal at this time. If there are no further questions on jurisdiction, I'll get into a discussion of the merits. Go ahead. In this case, the care aides at Jasmine Hall's residential homes were on duty for five consecutive 24-hour shifts. They were paid for only eight of those 24 hours. They were not paid for the other 16 hours. When you say on duty, I didn't go through the record carefully enough. Is there some written directive or evidence of some oral directive that you're on call for the whole 24 hours and you're expected to help out and somebody's having trouble with a resident? Well, Jasmine Hall has stipulated in their pretrial statement that the care aides are on duty for 24-hour shifts, for five consecutive 24-hour shifts. What does on duty mean? My understanding that it means they need to be present to monitor and assist residents. So they're not free to leave? That would be my understanding. I believe that Jasmine Hall has also asserted, but this is beyond what's before this Court, but I believe that Jasmine Hall has also asserted that the residents, in fact, had periods of time in which they were free to leave. But, frankly, that seems to me a discrepancy and it hasn't been fully developed. Well, now, presumably there's eight hours of sleep somewhere in there in the 24, right? Correct. And how is somebody on duty while the person is sleeping? Well, if the residents get up, if there are problems, the care aides have to be available to deal with those situations. And my understanding is that these homes have a high level of disability. The residents need significant monitoring. But I don't get it. How can you be monitoring if you're sleeping? Well, I mean, I guess they have to sleep lightly, would be. They have to sleep lightly and be alert to the possibility. They are required. For Jasmine Hall to operate, they need to have care aides on site 24 hours. Are people allowed to knock on their doors and wake them up to do anything? Excuse me, can you repeat that? During their sleep time. If I don't want the hotel to bother me, I can put a do not disturb sign on my door. Do they have some custom where you don't get disturbed? No, not at all. Quite the opposite. It's my understanding that when they were needed because there was a problem with one of the residents, the fact that they wanted to continue sleeping was irrelevant. They had to get up and go. Did somebody wake them up? I believe so. I frankly don't know the full facts. I thought you said a minute ago that they have to sleep lightly so they can be aware. Well, exactly. I think that they are not able to. How do you do that? That's like saying don't sneeze. It's a biological function. Right. You may sleep lightly when you want to sleep heavily. These facts are a little bit beyond my thorough knowledge of the case, but it's my understanding that when a resident wakes up because they're creating a commotion in the kitchen or starting to set the house on fire, I have heard has been attempted, then the care aides do have to wake up. And whether they've been fully asleep or not, I do not know. You have to deal with that. Have any facts been found yet with respect to what is typical here or what actually happened in terms of anyone who's had this five-day, 24-hour on-duty, in quotes, assignment? Any facts been found as to whether they were actually on duty, you mean? Or what happens in the 24 hours? I do not. And, for example, this light sleeping point you make. Is that in the record anywhere? Is that found? I do not believe it has been fully developed, because what happened was Jasmine Hall asserted that it could rely on this regulation. And we disputed that. And so in our attempt at mediation, it came down to a disagreement about the applicability of this regulation. And as a result, the facts, to my understanding, were not fully developed on whether they were interrupted, how often they were interrupted and how much. Now, this is 22, 785.22, when an employee is required to be on duty for 24 hours or more. Yes. The employer and the employee may agree? Correct. That one. And Jasmine Hall has not, at this point, they have not sought to use 22. They have only sought to use 23. And the Department maintains that the Department interpreted 23 in the residential care context in 1988 after a thorough consideration of the issue in this industry and with input from the industry association, the Department determined that for use of this regulation, an employee residing on the premises requires that the employee be provided with a bedroom separate from coworkers and residents. Only then do you get to enter an agreement and assess whether it's reasonable or not. Well, the 785.22 says provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. Now, that's the governing reg, isn't it not? Well, 22 is different. 22 does not have a private bedrooms requirement. The Department has never asserted that it, interpreted it to have that. 23 is the regulation in which the Department has interpreted there to be a private bedrooms requirement. And 23 is the regulation that Jasmine Hall has sought to use to justify its practices. It is not. Employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time? Correct. And that's the, that is the only regulation that is at issue. If this Court accepts interlocutory review, that is the only regulation that is directly at issue because that is the only regulation that the district court deferred to the Department's interpretation of. And it's important to keep in mind that this regulation, 23, is essentially an exception to the normal FLSA rule that requires an employee to be compensated for all the time that they are on duty. This regulation benefits the employer because it permits the employer to exclude time from hours worked and pay the employee less than the employer would otherwise have to. Well, now, with respect to these interpretive letters, were they promulgated with their normal notice and comment rulemaking? No, they were not. The nor were the regulations. How can they trump the regulations? They do not trump the regulations. They are just a clarification of the regulations as applied to this particular industry. I don't, I do not, in fact, I believe that the interpreters. Well, that seems to me, at least from what you say, that seems to say, well, that supersedes the regulation. Actually, I. It's a clarification, but if it's different from the regulation. Well, there's no inconsistency in the enforcement policy, 1988 enforcement policy or the 81 opinion letter. There's no inconsistency between those and the regulation. And, in fact, the language in the regulation supports the Department's interpretation in the enforcement policy. So, in other words, the Department interpreted its own regulation in the 1988 enforcement policy. And its interpretation is not inconsistent with that regulation. In fact, the regulation discusses, it's titled Employees Residing on the Premises or Working at Home. It discusses that an employee is normally able to engage in private pursuits. All of that language suggests an employee who is, has time really to use for their own purposes, and that time is properly not compensable. So in this context, for an employee to really be able to have the time for themselves, a private, the Department has interpreted that a private bedroom is appropriate. And in this case, it's a good illustration, because here you have four employees sharing a single bedroom, or a married couple and a coworker sharing a single bedroom. And that effectively does not allow these employees to use the time for their own purposes. They can't talk to their family on the phone in private. They can't be alone or read a book in quiet. And in these homes, there is nowhere else for the employees to go to be alone. They literally have nowhere to go to have privacy. So in this particular context, it's reasonable for the Department to have interpreted this regulation to require that the employer provide private bedrooms for the employer in order to take advantage of the exception that the regulation permits in that the employer does not have to pay the employee for all the time that the employer would otherwise have to. And as this Court noted earlier, this regulation has been in effect for over 20 years. It's been widely disseminated throughout the industry, and it was formulated with industry in mind. You referred to it as a regulation. Is that what it was? I'm sorry. This interpretation, the 1988 enforcement policy interpretation, I misspoke. Is there a requirement that they have to follow that particular document? That employers have to? Well, it does not have the force of law. It was not a notice and comment rulemaking or interpretation of a notice and comment rulemaking. But it is a reasonable interpretation, and therefore merits deference. Does that comply with being reasonably settled or unsettled? In terms of the jurisdictional issue? Yeah. Well, I believe that it shows that it's settled in that this is the first case where this issue has come up in over 20 years that this enforcement policy has been in effect. You think it's settled because no one's complained in 20 years? Well, yeah. It's not an issue that's been percolating out there among the district courts. I mean, it is unsettled in that it is, yes, an issue of first impression and has never been directly addressed by the courts. But by all accounts the view of the department, what you're saying is the view of the department has been out there for 20 years and this is the first complaint. Right. I can think of a couple of possibilities for that. One is that the department has previously had lax enforcement and people have been doing what this particular facility did for many years. Another possibility would be nobody else has pushed it as far as this facility has and everybody else had really separate quarters and privacy and family-like conditions or home-like conditions. And I don't know which it is. Is there anything in the record that throws light on whether the department's pushing harder or the home is pushing harder? I don't believe there's anything in the record. Tangentially related, though, is the we submitted the industry wage and hour handbook, which is issued to employers in this industry, includes a copy of this regulation, of this interpretation. One could infer from that, but there's no specific evidence that it's being complied with. But the department has no ---- I cannot state that it is being fully complied with throughout the industry. It seems to be widely disseminated. And I don't believe it's because of lax enforcement, but I cannot state that. All right. Thank you, counsel. Your time has expired. Thank you. Mr. Lee, you have some reserve time. The district court made its ruling based upon an issue of law without determination of the facts. It said in all circumstances that you cannot share bedrooms, whether it's married couples or otherwise. And in terms of the specific facts, respectfully, the statements of the DOL are incorrect regarding the facts regarding Jasmine Hall care homes, including, even though these facts weren't reviewed by the district court, if you look at excerpt of record, starting at excerpt of record 84, you'll see, for example, a woman who shared the bedroom with her husband. You'll also see facts regarding the fact that they did get eight hours of sleep, that during the day they watched soap operas, they went out shopping. So there's a number of facts. They also shared there was a third person in the bedroom? There are some circumstances in which there were three, but the narrow issue that we see that is before this Court and which we seek reversal of is the per se rule that for the married couples and for everyone else that the reasonable agreements will not be considered, because the applicable regulation is 785.23. If you reside there, you consider the agreement, whether it's reasonable under the circumstances. The district court has said you may never do that if you share a bedroom. That violates the Supreme Court's instructions in Skidmore to consider the circumstances. When you're talking about sharing the bedroom, are you talking about the threesome, let's say, or just even sharing where the two people are, husband and wife? Right. There are cases, and Jasmine Hall Care Homes needs to know this going forward because of the declaratory relief action. These are houses. The employees live there. In fact, turnover is very low. In fact, in terms of whether this is longstanding, the Department of Labor audited Jasmine Hall Care Homes in 1998 and found no violations. So in terms of this issue of this interpretive bulletin that's not subject to any deference being longstanding, the audit found no violations. The Eighth Circuit has criticized the 88th Bulletin in its ruling in Bouchard stating you can't add these requirements about you have to have a desk or a drawer or pay them eight hours a day. You actually have to go look at whether they slept or what the reasonable circumstances were. You can't add these issues in terms of requirements. Those go beyond what Skidmore tells you. But there are no factual findings yet in this case. Is that right? There are not factual findings because the critical issue was is there a per se rule as the Department of Labor has taken it? Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Wallace, O'scannlain, Kleinfeld